**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

BUILDING PLASTICS, INC.,
Plaintiff/Counter-Defendant,

v.

SHERWIN-WILLIAMS COMPANY,
Defendant/Counter-Plaintiff,

and CFL FLOORING, LTD.,
Defendant/Cross-Defendant.

No. 2:25-cv-02660-SHL-cgc

**ORDER GRANTING BUILDING PLASTICS, INC.'S SECOND MOTION TO AMEND COMPLAINT AND DENYING AS MOOT CFL FLOORING, LTD.'S MOTION TO DISMISS**

Before the Court are Defendant/Cross-Defendant CFL Flooring, LTD.'s ("CFL") Motion to Dismiss, and Plaintiff/Counter Defendant Building Plastics, Inc's ("BPI") Second Motion to Amend Complaint. (ECF Nos. 46, 62.) CFL seeks to dismiss Count Three in BPI's First Amended Complaint, (ECF No. 33), arguing lack of subject matter jurisdiction and improper venue. (ECF No. 46.) BPI moves to amend its Complaint to add two foreign defendants identified during discovery, and allegations supporting venue and ripeness. (ECF No. 65.) For the reasons described below, BPI's Second Motion to Amend is **GRANTED**, and CFL's Motion to Dismiss is **DENIED AS MOOT**.

## I. BACKGROUND

According to BPI, it supplied flooring products, including the product at the center of this lawsuit, to Defendant/Counter-Plaintiff Sherwin-Williams' retail outlets for over thirty-five years. (ECF No. 33 at PageID 160.) Starting in 2020, Sherwin-Williams allegedly sold the floor

product at issue to Hughes Construction, which installed the flooring in apartment buildings across Mississippi and Oklahoma. (Id. at PageID 161.) BPI alleges that, because of a dispute arising between Sherwin-Williams and Hughes Construction involving flooring that BPI sold but was supplied by a CFL entity, Sherwin-Williams ceased all payments to BPI in August 2024, and, a few months later, submitted chargeback notifications[1] dated 2020–23, totaling around $798,000.00. (Id. at PageID 162.)

In an attempt to resolve the dispute, BPI alleges that Sherwin-Williams, CFL, and the general contractor of the apartment buildings met and inspected the installation of the flooring product and alleged damage to the floors at several of the subject apartment buildings to determine whether the issues were caused by defective material or improper installation. (ECF No. 33 at PageID 162.) Sherwin-Williams contends that the flooring material was defective, while CFL counters that the flooring was improperly installed. (Id. at PageID 163; ECF No. 43 at PageID 212; ECF No. 73 at PageID 427.) If installation was improper, the manufacturer's warranty, allegedly issued by CFL, would not be applicable. (ECF No. 33 at PageID 162.) BPI denies that the flooring product was defective, but states that "if Sherwin-Williams sustained damages as a result of any defect in the flooring products, such damages were caused by acts or omissions of the 'CFL Defendants' in the design, manufacture, testing, inspection, packaging, labeling, marketing, distribution, and/or quality control of the products." (ECF No. 62-1 at PageID 327.)

In 2025, BPI filed this lawsuit against Sherwin-Williams, but alleged that the flooring product was manufactured by CFL. (ECF No. 1 at PageID 3.) On April 15, 2026, Sherwin-

[1] A chargeback notification is a notice that a buyer intends to deduct a stated amount from payments owed to the seller because of an alleged issue.

Williams, filed an Answer to BPI's First Amended Complaint, with counterclaims against BPI, and crossclaims against CFL, alleging that the flooring products "manufactured by CFL are defective." (ECF No. 43 at PageID 212.)

On May 4, 2026, CFL filed its Motion to Dismiss BPI's First Amended Complaint,[2] asserting that BPI's indemnity claim is unripe, and venue is improper in the Western District of Tennessee. (ECF No. 46.) Additionally, on May 6, CFL filed its Answer, denying CFL's involvement in the manufacture, design, or supply of the flooring product. (ECF No. 48.) As a result, BPI commenced an investigation to identify entities within the supply chain, ultimately serving CFL targeted interrogatories to confirm which of the "three potentially relevant entities located in Vietnam and China" were involved in the manufacture, supply, or sell of the product. (ECF No. 62 at PageID 316; ECF No. 68 at PageID 402.) On August 21, 2026, according to BPI, CFL identified two foreign corporate entities in its response: CFL International as the manufacturer, and VN Ecofloor as the seller of the product.[3] (ECF No. 68 at PageID 402.) BPI then sought to file a second amended complaint. (Id.) The proposed second amended complaint

---

[2] Specifically, in its First Amended Complaint, BPI alleged that (1) "CFL had a duty to design, manufacture, and supply the subject products in a manner that complied with all applicable standards, warranties, and industry requirements," (2) any defects "arose solely from CFL's acts or omissions in the design, manufacture, testing, formulation, or quality control of the products," (3) "CFL is contractually and/or equitably obligated to indemnify, defend, and hold harmless BPI from any and all damages, losses, liabilities, costs, or expenses arising out of or relating to the alleged defect," and (4) "BPI is entitled to full indemnification from CFL for any judgment, settlement, fees, or other amounts BPI may incur as a result of claims related to the alleged defect." (ECF No. 33 at PageID 164–65.)

[3] Notably, CFL asserts in its Response to BPI's Motion to Amend that BPI incorrectly characterizes CFL International and VN Ecofloor's purported roles. (ECF No. 65 at PageID 385, n.3.) BPI states that the former is the purported manufacturer, and the latter is the seller. (Id.) But CFL contends that "CFL International sold the products to BPI, while VN Ecofloor was the third-party contract manufacturer that produced them." (Id.) This conflict speaks to the confusion of the actual roles of the entities within the supply chain.

adds as parties the foreign entities identified in CFL's discovery responses, and adds supporting allegations as to venue and the indemnity claim against CFL, CFL International, and VN Ecofloor.[4] (Id.)

## II. ANALYSIS

Although the initial motion at issue here is CFL's Motion to Dismiss, the amended complaint, if permitted, would moot CFL's Motion under the present circumstances. Therefore, the analysis begins with consideration of BPI's Second Motion to Amend. CFL opposes BPI's Motion under Rules 16 and 15, contending, respectively, that BPI has not demonstrated good cause to modify the Scheduling Order, and that BPI's Motion fails for undue delay, prejudice, repeated failure to cure, and futility. Each of CFL's arguments are addressed below. CFL relies on the same substantive arguments in its Motion to Dismiss[5] to support its argument that BPI's amendment would be futile, thus, ripeness and venue are also addressed below.

---

[4] In its proposed Second Amended Complaint, BPI alleges that venue is proper under 28 U.S.C. § 1391(b)(2) "because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District," as the subject invoices in this action "were generated, maintained, and administered by BPI in Memphis," "[p]ayments from Sherwin-Williams were directed to Plaintiff in Memphis," and "the economic injuries resulting from Sherwin-Williams' refusal to pay and assertion of chargebacks were suffered by BPI in" this District.

BPI also adds language to support the ripeness of its indemnity claim in Count Three of the proposed Second Amended Complaint, alleging, among other things, that (1) "[a]s a direct and proximate result of those allegations, BPI has already sustained actual and present damages . . . ;" and (2) "[a]n actual and present controversy exists between BPI and the CFL Defendants concerning responsibility for the losses and damages alleged by Sherwin-Williams, and [] the CFL Defendants' duty to indemnify and defend BPI with respect to those claims."

[5] CFL contends that BPI's Second Motion to Amend is an "attempt to plead around" CFL's Motion to Dismiss. (ECF No. 65 at PageID 393.) However, amending pleadings (or "pleading around") is a recognized way to address motions to dismiss. As discussed here in Section II.B, Rule 15 sets the standard as to whether granting leave to amend is proper. See Fed. R. Civ. P. 15; see also Morse v. McWhorter, 290 F.3d 795, 801 (6th Cir 2002) (concluding, under the circumstances, that the inconvenience of another potential round of motion practice did not warrant denying leave to amend).

### A. Good Cause Under Rule 16

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause is shown by a party's diligence in attempting to meet the deadlines, lack of prejudice to the nonmoving party, and consideration of the length or number of extensions requested. Ky. Peerless Distilling, LLC v. Fetzer Vineyards Corp., No. 3:22-CV-037-CHB, 2022 U.S. Dist. LEXIS 254073, at *2 (W.D. Ky. May 19, 2022) (citing Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002)).

Here, CFL contends that BPI waited too long to add the foreign entities—one of which CFL alleges that BPI knew about before filing the original complaint due to transactional records that identified CFL International as the "seller/importer of record." (ECF No. 65 at PageID 387.) BPI responds that it did not have a reliable basis to allege the foreign entities' involvement until CFL identified CFL International and VN Ecofloor in its interrogatory responses. (ECF No. 68 at PageID 407.) BPI further argues that it diligently pursued this information, first by attempting to acquire confirmation from CFL's counsel, then by serving formal discovery to CFL. (ECF No. 68 at PageID 403.)

Diligence is the primary consideration to determine good cause, and BPI's repeated efforts to uncover the identity of the foreign entities who had roles in the sale and manufacture of the product at issue demonstrate diligence. The fact that one of the identified entities' names appears on BPI's transactional documents does not discount BPI's diligence because, without more, such a fact may not create a reliable basis to add that company to a lawsuit.[6]

Further, allowing this amended complaint will not prejudice CFL, because any

---

[6] That is especially true in this case, where the names of the entities are so similar, and serving a foreign defendant requires substantially more effort and resources than a domestic defendant.

involvement of the proposed new parties concerns the same events already at issue, and BPI's lengthy outreach and targeted discovery diminishes any surprise to CFL. Moreover, CFL will have sufficient time to conduct any necessary discovery, as discovery deadlines were extended in the October 16 Scheduling Order, predominately as a result of the issues discussed here. (ECF No. 71.) For these reasons, good cause exists to allow this out-of-time amendment.

**B. Delay, Prejudice, and Repeated Failure to Cure Deficiencies Under Rule 15**

When the time to amend a pleading as a matter of right has expired, and an adverse party does not consent to amendment, a party may nevertheless amend with leave of a court." Fed. R. Civ. P. 15(a)(2); Foman v. Davis, 371 U.S. 178, 182 (1962). "In the absence of any apparent or declared reason[,] such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment," leave to amend should be freely given. Foman, 371 U.S. at 182. Whether to grant leave to amend is committed to the court's sound discretion. Id. However, a court's "[o]utright refusal to grant the leave without any justifying reason [] for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Id.

Here, CFL contends that the amendment will unduly delay proceedings and prejudice CFL, and that BPI has had repeated opportunities to cure any deficiencies in its complaint. (ECF No. 65 at PageID 390–91.) BPI responds that any delay was due to its diligence in identifying the proper parties, not bad faith. (ECF No. 68 PageID 407.) Further, in BPI's view, adding the parties will cause no prejudice to CFL as BPI will bear the logistical expense associated with foreign service, and the new entities will bear the responsibility of responding to BPI's allegations. (Id. at PageID 408.)

Although BPI's Motion to Amend comes months after the commencement of this lawsuit, the initial scheduling order, and the First Amended Complaint, the passage of time alone does not justify denial, absent a showing of bad faith or prejudice. BPI diligently sought the information it needed to establish a reliable basis for adding the foreign entities to the lawsuit. The proposed amendment will not prejudice CFL for the reasons stated above, and because BPI will bear the expense of serving the foreign entities. Moreover, despite BPI's prior amendment, it was unaware of any deficiencies in the First Amended Complaint until CFL denied its role in the manufacture, design, supply, and sale of the flooring, and identified entities that it purports were involved in the supply chain. For these reasons, the Court finds that the amendment was not unreasonably delayed, and CFL will not be prejudiced.

**C. Futility Under Rule 15**

Courts should not allow amendment under Rule 15 when the proposed amendment does not adequately address a deficiency in the original pleading, or in other words, when a proposed amendment would be futile. See Foman, 371 U.S. at 182. To determine whether an amendment would be futile, a court analyzes whether it appears that the proposed amendment would survive a subsequent motion to dismiss or a motion for judgment on the pleadings. Showman v. Q Corp. Holdings, LLC, No. 23-cv-00986, 2024 WL 4336373, at *5 (N.D. Ohio Sep. 27, 2024) (citing Skatemore v. Whitmer, 40 F.4th 272, 373 (6th Cir. 2022)). "To survive a motion to dismiss, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the pleaded factual content allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Whether a complaint raises a right to relief above the speculative level—'does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."'" Bassett v. Nat'l Collegiate Ath. Ass'n, 528 F.3d 426, 430 (6th Cir. 2008) (quoting Twombly, 550 U.S. at 555–56).

Here, CFL relies on the same substantive arguments in its Motion to Dismiss to support its argument that BPI's amendment would be futile. First, CFL argues that the amendment would be futile because BPI's indemnity claim against CFL, CFL International, and VN Ecofloor is not ripe as it alleges only future, contingent liability that is dependent on a finding that the CFL flooring was defective. CFL also contends that BPI's alleged damages "flow from BPI's separate dispute with Sherwin-Williams and its own litigation and investigation choices, not from any adjudicated or admitted product defect attributable to CFL." (ECF No. 65 at PageID 393–94.) Moreover, CFL contends that BPI's collective reference to "CFL Defendants" and collective attribution of conduct to those "distinct entities" compounds the deficiencies in BPI's claims. (Id.) Specifically, CFL argues that the proposed Second Amended Complaint fails to identify any act or omission by CFL, or distinguish the named entities and each entity's responsibility. (Id. at PageID 394.) However, BPI maintains that its Amended Complaint sufficiently states claims against CFL, alleging a "concrete and present economic injury." (ECF No. 68 at PageID 408.) BPI contends that its proposed amendment primarily serves to add the foreign parties, and "merely provides further factual support" as to the added allegations regarding venue, ripeness, and the roles of the parties. (Id.)

"Generally, a claim may not be adjudicated on its merits unless it is ripe." Jackson v. City of Cleveland, 925 F.3d 793, 807 (6th Cir. 2019) (citing Nat'l Rifle Ass'n of Am. V. Magow,

132 F.3d 272, 284 (6th Cir. 1997). "A claim is unripe when it 'is anchored in future events that may not occur as anticipated, or at all.'" Id. The ripeness doctrine is derived from the case or controversy requirement of Article III of the United States Constitution, and prudential considerations. Id. "Application of this doctrine 'requires that the court exercise its discretion to determine if judicial resolution would be desirable under all of the circumstances.'" Id. (quoting Brown v. Ferro Corp., 763 F.2d 798, 801 (6th Cir. 1985)). Before dismissing an issue due to ripeness, a court should consider whether the issue is appropriate for judicial resolution. Id. And, if so, "the degree of 'hardship to the parties if judicial relief is denied' before the claim is allowed to ripen further. Id.

Viewing the facts in a light most favorable to BPI, as the Court must do at this stage, BPI's allegations specifically tie CFL and the foreign defendants to the damage alleged here. BPI alleges that it believes that the "CFL Defendants" "manufactured, supplied, and/or sold" the flooring product to BPI, and that its injuries—including, among other things, withheld receivables and loss in business—are a "direct and proximate result" of Sherwin-Williams' allegations that the CFL flooring product was defective. (ECF No. 62-1 at PageID 327.) These allegations create a reasonable inference that the "CFL Defendants" are liable for the damages alleged.

Moreover, BPI's indemnity claims are closely intertwined with the question of product defect, supported by Sherwin-Williams' allegations. Indeed, a product defect is directly tied to the product's alleged manufacturer's, supplier's, or seller's conduct, as BPI alleges in its proposed amendment. If, as CFL asserts, BPI's claims against it are presently unripe, they will soon likely ripen, unless the CFL flooring product is not found to be defective. But if the claims are dismissed, BPI will suffer hardship because its pled injuries are allegedly directly attributable

to CFL, CFL International, or VN Ecofloor's acts or omissions.

CFL also takes issue with BPI's collective reference to CFL, CFL International, and VN Ecofloor, and contends that BPI fails to identify any act or omission by the entities, or distinguish the entities' roles and responsibilities in the proposed Second Amended Complaint. (ECF No. 65 at PageID 394.) However, as the case is still in the early stages of discovery, these distinguishing facts may not yet be known to BPI. Which entity held which role, and any associated separate liability, has been the object of discovery thus far, and presumably will be determined with further discovery.

For these reasons, the Court finds that BPI's claims against CFL and the proposed foreign defendants are fit for adjudication.

Second, CFL argues that the amendment would be futile because venue is not supported by the well-pled facts connecting the operative events to the Western District of Tennessee. (ECF No. 65 at PageID 393.) CFL contends that the new venue allegations still fail to tie any substantial part of the events or omissions giving rise to the indemnity claim to this District because "the at-issue projects and installations were in Mississippi and Oklahoma, not Tennessee," and "internal administrative acts in Memphis do not satisfy 28 U.S.C. § 1391(b)(2)" for the indemnity claim. (Id. at PageID 394.) However, BPI's proposed amendment assuages any pleading deficiencies as to venue.

Venue is proper wherever a "substantial part" of the events giving rise to the claim occurred. Fed. Rules Civ. P. 28 U.S.C. § 1391(b)(2); Gone to the Beach, LLC v. Choicepoint Servs., 434 F. Supp. 2d 534, 539 (W.D. Tenn. June 15, 2006) (quoting First of Mich. Corp. v. Bramlet, 141 F.3d 260, 263 (6th Cir. 1998) ("[V]enue is proper where the underlying transactions and investments took place . . . .") Once a motion to dismiss is filed, the plaintiff

must demonstrate that venue is proper by a preponderance of evidence, but "because venue is an affirmative defense, a [plaintiff] is not required to address venue in its pleadings." Tobien v. Nationwide Gen. Ins. Co., 133 F.4th 613, 621–22 (6th Cir. 2025) (quoting Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petroleum Expl. & Prod. Co., 600 F. Supp. 3d 73, 78 (D.D.C. 2022)).

Here, BPI alleges that venue is proper because "the events and omissions giving rise to Plaintiff's claims [including the claims against CFL and the proposed foreign defendants as the alleged manufacturer, supplier, or seller of the flooring product] occurred in this District," including the generation, maintenance, and administration of the subject flooring-product invoices, Sherwin-Williams' refusal to pay and subsequent chargebacks, the longstanding supplier-buyer relationship of the parties,[7] and the economic injuries sustained. (ECF No. 62-1 at PageID 321.) These allegations are more than enough at the pleading stage, and they would likely survive a motion to dismiss, because BPI is a Tennessee company with its principal place of business in Memphis, and it is alleged that a substantial part of the events or omissions giving rise to BPI's allegations occurred in this district. See Gone to the Beach, 434 F. Supp. At 538–39. Accordingly, granting BPI's Second Motion to Amend would not be futile.

Therefore, BPI's Motion is **GRANTED** for good cause shown, and because the amendment is made in good faith, will not cause CFL prejudice, and will not be futile. BPI **SHALL** file the Second Amended Complaint as a separate docket entry within **FIVE DAYS** of this Order.

The filing of the amended complaint renders CFL's Motion to Dismiss moot, as "[a]n amended complaint, once filed, normally supersedes the antecedent complaint. Thereafter, the

---

[7] BPI alleges that Sherwin-Williams was a customer of BPI for over thirty-five years. (ECF No. 62-1 at PageID 322.)

earlier complaint is a dead letter and no longer performs any function in the case." Bituminous Cas. Corp. v. Tindle Enters., Inc., No. 07-1158, 2009 WL 2843375, at *4 (W.D. Tenn. Aug. 31, 2009) (citation modified) (quoting Connectu LLC v. Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008)). Particularly here, the Second Amended Complaint addresses issues CFL raised in its Motion to Dismiss. CFL's Motion to Dismiss is therefore **DENIED AS MOOT**.

**IT IS SO ORDERED,** this 23rd day of October, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE